WOODSIDE et ux. v. CANTON INS. OFFICE, Limited.

(District Court, N. D. California. December 24, 1897.)

No. 11,203.

MARINE INSURANCE—CONSTRUCTION OF CONTRACT.
 A policy of marine insurance, on "personal effects," consisting of clothing, silverware, nautical instruments, etc., of the insured and his family, and containing the clause, "Warranted free from all average," though ambiguous, because of uncertainty as to whether such clause refers to the entire property in gross, or to each separate article, will be construed against the insured as a severable contract, upon which the insured may recover for each article totally lost. The cases of Biays v. Insurance Co., 7 Cranch, 415, Humphreys v. Insurance Co., Fed. Cas. No. 6,871, 3 Mason, 489, and Gardere v. Insurance Co., 7 Johns. 514, distinguished.

This was an action by Alexander Woodside and Isabella Woodside to recover on a policy of marine insurance.

Page & Eells, for libelants.
Andros & Frank, for respondent.

DE HAVEN, District Judge. This is an action to recover upon a policy of marine insurance. The policy was dated March 12, 1895, and by it the defendant insured Alexander Woodside in his own name, and for himself and all others interested, in the sum of $2,000, for the term of one year, upon property described in the policy as "personal effects belonging to himself and his family, valued at the sum insured." There was written on the margin of the face of the policy the following memorandum clause: "Warranted free from all average." The personal effects thus insured consisted of various articles of clothing, silverware, an organ, sewing machine, nautical instruments, charts, etc., belonging to the libelants, and in the steamer Bawnmore, of which the libelant Alexander Woodside was master. On or about the 28th day of August, A. D. 1895, the said steamer was stranded on the coast of Oregon, and became a total loss; and all of the personal effects belonging to the libelants, and covered by the policy of insurance sued on, were at the same time totally lost, by reason of perils insured against by said policy, except one sextant, which was saved in a damaged condition, 13 charts, a few clothes, including the apparel worn by the libelants at the time, four pairs of shoes, and a few suits of underwear. These articles, in the condition in which they were saved, were worth about $78.

The question for decision is whether, upon the foregoing facts, the libelants are entitled to recover. The memorandum "Warranted free from all average" has a well-settled meaning in the law relating to marine insurance. The legal effect of such a memorandum is to protect the underwriter from liability on account of a partial loss of any particular article or class of articles to which the memoran-

dum applies, so that the only question that can possibly arise in relation to such article or class of articles is whether the loss was total or not. Morean v. Insurance Co., 1 Wheat. 219; Marcardier v. Insurance Co., 8 Cranch, 39; Biays v. Insurance Co., 7 Cranch, 415; Humphreys v. Insurance Co., 3 Mason, 429, Fed. Cas. No. 6,871; Wadsworth v. Insurance Co., 4 Wend. 34; Ralli v. Janson, 88 E. C. L. 423. It will be observed that there is nothing upon the face of the memorandum clause contained in the policy under consideration here to indicate whether such memorandum is to be applied to all of the personal effects insured, considered as one entire subject of insurance, or, on the other hand, whether it was the intention of the parties that it should apply to each article separately. It might be applied either to all of the effects collectively, or distributively to each, without violence to its language. Such being the case, in reaching a conclusion as to the true meaning of the memorandum, it is necessary to consider whether, in describing the property insured as "personal effects," it was the intention of the parties that such effects should be treated as an integral subject of insurance, or whether it was the intention that each of the different articles included in the general description "personal effects" should, for the purposes of the contract, be regarded as retaining its separate and distinct character. Under the former construction, there would be only one subject-matter of insurance to which the memorandum clause could apply, and the respondent would not, under the rule declared in the cases above cited, be liable in this action, because there was not a total loss of all the property comprising the effects of the libelants; while, under the latter construction, the memorandum would be applied to each of the articles insured, and the defendant would be liable, in a sum not exceeding the amount named in the policy, for each and all articles which were totally lost.

Whether a contract is entire or severable is a question of construction. If, in this case, the policy had enumerated the different articles, and had expressly stated the amount of insurance on each, there would be no difficulty in holding that the contract of insurance sued on is severable in law; and so, on the other hand, if there were an express provision in the policy to the effect that the underwriter was not to be liable, except in the event of a total loss of all the personal effects insured, it would be equally clear that such contract would be entire within the meaning of the law; but in this policy neither of these explicit provisions is to be found, nor any other language which would indicate with equal certainty whether the contract of insurance contained therein is to be classed as an entire or severable one. The intention of the parties in this respect can therefore be ascertained only by a resort to some one or more of the general rules observed by courts in the interpretation of contracts.

It was said by Mr. Justice Washington, in delivering the opinion of the court in Perkins v. Hart, 11 Wheat. 237:

"Where the agreement embraces a number of distinct subjects, which admit of being separately executed and closed, it must be taken distributively, each subject being considered as forming the matter of a separate agreement after it is so closed."

Applying that rule, I see no difficulty in holding that the contract under consideration here is severable. The articles comprising the effects insured are essentially separate and distinct, and each might have been made, by express language, the subject of a separate insurance. To have enumerated each separately, and with the amount of insurance on each, would have been somewhat inconvenient, and, in my judgment, was not absolutely necessary in order to make the contract of insurance severable. That the contract related to articles, each having a distinct character and value, just as clearly appears from their general description as "personal effects" as if the chronometer, organ, sextant, sewing machine, silverware, silk dresses, and other things had been separately enumerated and valued in the policy; and there is no difficulty in apportioning the gross amount for which all were insured, so as to cover the value of any one of the different articles wholly lost, and it is not perceived how a separate enumeration and valuation would have added to the protection or security of the underwriter against a fraudulent or unjust valuation of any article wholly lost.

The conclusion that the contract of insurance sued on should be construed as separately insuring the different articles therein described as "personal effects" is fully sustained by the case of Duff v. Mackenzie, 91 E. C. L. p. 16. In that case the insurance was on "master's effects, valued at £100, free from all average." Some of the effects were totally lost by a peril insured against, and others saved; and in that case the court held that the insured was entitled to recover in respect to the articles totally lost. The court in that case said:

"The word 'effects' is obviously employed to save the task of enumerating the nautical instruments, the chronometer, the clothes, books, furniture, etc., of which they happen to consist. And although it is stipulated by the warranty that these effects shall be free of all average, or, in other words, that the insurer shall not be liable for any amount of sea damage to them short of a total loss, we think, looking at the nature of the subject of insurance and the terms of the exemption, it is doing no violence to the language used to hold that he is not to be exempted from liability for a total loss of any of the articles of which the 'effects' consisted."

Nor is the conclusion that the contract of insurance involved here is severable in law in conflict with the cases of Biays v. Insurance Co., 7 Cranch, 415; Humphreys v. Insurance Co., 3 Mason, 429, Fed. Cas. No. 6,871, and Guerlain v. Insurance Co., 7 Johns. 526, relied upon by respondent, as a brief reference to each of these cases will show.

In Biays v. Insurance Co., 7 Cranch, 415, the insurance was on hides, which, by a memorandum in the policy, were "warranted by the assured free from average, unless general." Seven hundred and eighty-nine hides, out of a total of 14,565, were lost; and the question involved was whether the underwriters were liable for the number of hides which were totally lost. The court held that the insurance company was not liable; that the loss was only a partial loss. The court said:

"The proposition appears too self-evident not to command universal assent, that when only a part of a cargo, consisting all of the same kind of articles,

is lost in any way whatever, and the residue (which in this case amounts to much the greater part) arrives in safety at its port of destination, the loss cannot but be partial, and that this must forever be so, as long as a part continues to be less than the whole."

In that case it will be seen that, by the memorandum, hides were declared to be "free from average, unless general.". In other words, the defendant company specifically stipulated against any liability on account of a partial loss of the hides not resulting from a general average.

In the case of Humphreys v. Insurance Co., 3 Mason, 429, Fed. Cas. No. 6,871, which was an action upon a policy of marine insurance, it appeared that oranges and lemons formed a part of the cargo covered by the policy, and that there had been a total loss of the oranges, and only a partial loss of the lemons. The policy of insurance contained a memorandum clause which in express terms exempted the underwriter from particular average or partial losses on "salt, fish, fruit, grain," etc.; and the question was whether, in view of such memorandum, the plaintiff was entitled to recover the value of the oranges totally lost. It was held by the court that he could not, as the loss of the oranges alone did not constitute a total loss of the memorandum article, fruit. In that case it will be seen that fruit was specifically referred to in the memorandum as a part of the cargo for which the insurance company was only to be liable in the event of a total loss, and the court simply held that, by its express language, all fruit was included in the memorandum.

The decision in Guerlain v. Insurance Co., 7 Johns. 526, was based entirely upon a clause of the policy which read: "The assurers, by this policy, take no other risk than general average, and such total loss only as may arise by the absolute destruction of the property." Manifestly, under such a policy, the court properly held that the insurance was upon the whole cargo as an integral subject.

The question in every case is one of construction. As already stated, it is to be observed—and this marks the difference between this case and those relied upon by respondent—the memorandum clause under consideration here does not in express terms say that it is to be applied to the articles insured collectively as one entire subject. On the contrary, no violence is done to its language by construing it as if intended by the parties to be applied distributively to the several articles insured. There being this ambiguity in the memorandum, it is the duty of the court to construe it distributively, unless such construction would be manifestly in conflict with other parts of the policy, or unless, thus construed, it could not be applied to the property insured. It is a general rule of law that a policy of insurance, being a contract of indemnity to the assured, is to be liberally construed in his favor; and, in accordance with that rule, it is held that an exception from the risks of the policy is to be construed strictly against the insurer:

"Such an exception is a modification of the promise of indemnity, and, as that promise is to be liberally construed, it is a necessary consequence that the exception cannot be permitted to abridge its operation to a greater extent than the terms used plainly require." 1 Duer, Ins. par. 6, p. 161.

In Blackett v. Assurance Co., 2 Crompt. & J. 244, the court held that a memorandum clause in a policy of marine insurance is in the nature of an exception from certain risks covered by the general language of the policy, and therefore, in case of doubt as to its meaning, must be construed strongly in favor of the insured; and in its opinion, delivered by Lord Lyndhurst, C. B., used the following language, which is particularly applicable to the present case:

"The memorandum is in the nature of an exception. The policy is general, extending to all losses. The memorandum excepts losses where each or all, according to the construction to be put upon it, are under 3l. per cent. The rule of construction as to exceptions is that they are to be taken most strongly against the party for whose benefit they are intended. The words in which they are expressed are considered as his words, and, if he do not use words clearly to express his meaning, he is the person who ought to be the sufferer."

Indeed, the law may be considered as settled that, where the language of a policy will fairly admit of two constructions, the court should construe the provisions of the contract strictly as respects the underwriter, and liberally as regards the insured. Grace v. Insurance Co., 109 U. S. 282, 3 Sup. Ct. 207; Burkheiser v. Association, 10 C. C. A. 94, 61 Fed. 816; Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360. Let a decree be entered in favor of the libelants, and against the respondent, for the sum of $2,000, with interest from October 29, 1895, and costs.