CHICAGO—FIRST DISTRICT—JUNE, 1923.    19

Butler Street F. & I. Co. v. Ill. Mfrs. Casualty Assn., 230 Ill. App. 19.

# Butler Street Foundry & Iron Company, Appellee, v. Illinois Manufacturers Casualty Association, Appellant.

## Gen. No. 28,056.

1. INSURANCE—*sufficiency of evidence to support verdict against insurer*. A verdict for the assured, necessarily based on a finding by the jury that a particular rider had been attached to the policy when it was delivered to the assured by the insurer, will not be disturbed on appeal where assured's office manager testified that the rider was attached to the policy when he received it by mail from the insurer, and it is shown that previous policies had carried similar riders and that the policy in question was a renewal of a policy carrying such a rider, although the manager for the insurer, whose testimony was corroborated to some extent, testified that such rider had been omitted from the policy in question because unnecessary under the application, where his testimony appears to have been based upon the usual workings of a system in an office handling large numbers of policies rather than definite recollection of a specific instance.

2. INSURANCE—*construing riders and policy as one instrument*. A rider extending the application of a casualty insurance policy which primarily indemnified the assured against liability for injuries to its employees under the Workmen's Compensation Act, Cahill's Ill. St. ch. 48, ¶ 201 et seq., to bodily injuries or death "suffered in connection with the assured's operations anywhere in the State of Illinois," is not limited in its application to injuries to employees by reason of its reference to "the undermentioned policy," but qualifies also another rider containing a public liability endorsement by which the policy was made applicable to loss on account of injuries to third persons from accidents occurring on the premises of the assured, not caused by vehicles, especially where the primary liability covers injuries to employees received off the premises; and such rider makes the policy applicable to a loss suffered by the assured by reason of an injury to third persons on a highway five miles distant from its premises through the negligence of its employees in leaving a heavily laden truck stand in the highway without any warning lights thereon.

Appeal by defendant from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the first division of this court for the first district at the October term,

Butler Street F. & I. Co. v. Ill. Mfrs. Casualty Assn., 230 Ill. App. 19.

1922.    Affirmed.    Opinion filed June 25, 1923.    Rehearing denied July 6, 1923.

Fyffe & Clarke, for appellant.

James Ewing Davis and Ernest C. Reniff, for appellee.

Mr. Presiding Justice McSurely delivered the opinion of the court.

Plaintiff bringing suit upon a policy of indemnifying insurance had a verdict for $10,000.    Defendant seeks to have the judgment reversed.

Plaintiff alleged, and it was stipulated, that on June 7, 1918, when plaintiff had a casualty insurance policy issued by defendant, certain persons, not employees, received injuries resulting in the death of two of them by reason of a collision between an automobile in which they were riding and a horse-drawn truck of plaintiff loaded with steel beams, while it was standing in a public highway in South Chicago, Cook County, Illinois, some miles away from plaintiff's plant; that suits were brought against plaintiff herein, Butler Street Foundry & Iron Company, alleging that these injuries were caused by its negligence with reference to its truck, and upon trial judgments were entered against the foundry company aggregating $15,500, which were paid by it; that when these suits were brought all notices required by the policy in question were served upon defendant herein, Illinois Manufacturers Casualty Association, calling upon it to defend these suits or indemnify the assured pursuant to the obligations under the policy; defendant refusing, this suit followed.

The only controverted question of fact relates to a rider, which plaintiff claims was attached to the policy when it was delivered but subsequently became detached and lost.    Defendant asserts that this par-

ticular rider was not attached to the particular policy in force at the time of the accident.

The office manager of the plaintiff company, Mr. Linder, testified that he began taking out insurance with the defendant in October, 1914, and continued each year thereafter, including October 4, 1917, the date of the controverted policy. It is conceded that each policy for the years 1914, 1915 and 1916 contained a rider entitled "Public Liability Endorsement," and another rider which for convenience we designate "Rider No. 2." The instant policy was sent to plaintiff with a letter stating, "This is a renewal of your present policy, 769, expiring on October 5, 1917." Linder testified that when he received this policy it had pasted to it the "Public Liability Endorsement" and also "Rider No. 2." On the other hand, the manager of the defendant company testified that this policy did not have Rider No. 2 attached, and that it was omitted under instructions from him for the reason that it was unnecessary because of a change in the application with reference to the territory covered. A stenographer in the office of defendant gave testimony tending to support defendant's version. The jury probably gave greater weight to the affirmative testimony of Linder than to defendant's testimony on this point, which apparently rested not so much on a definite recollection of this particular instance as upon the usual workings of a system. The large number of policies handled each year by defendant's manager would tend to lessen the weight of his testimony as to his recollection of this particular instance.

From these and other circumstances appearing upon the trial, we cannot say that the jury could not properly accept plaintiff's version with reference to Rider No. 2. We shall therefore consider the liability of defendant as based upon the policy with the two riders attached.

It is urged that under the language of the policy and the "Public Liability Endorsement" there is no liability upon defendant to indemnify plaintiff for the losses sustained under the circumstances of the accident and that the language of Rider No. 2, which defendant proved by secondary evidence, does not change this nonliability.

The policy primarily insured and indemnified plaintiff against loss by reason of liability imposed under the Workmen's Compensation Act [Cahill's Ill. St. ch. 48, ¶ 201 et seq.] for damages on account of injuries to plaintiff's employees. The "Public Liability Endorsement" or rider provided that in consideration of an additional premium the policy was extended to indemnify the insured against losses by reason of the liability imposed by loss or damages on account of accidental bodily injuries, including death, suffered "by any person or persons not employed by the Assured providing that such accidents are sustained while within or upon the premises of the Assured as defined in the policy to which this endorsement is attached, or ways immediately adjoining; but this does not apply to injuries  *  *  *  caused by reason of the use, maintenance or ownership of any horses, draft animals, or vehicles, or automobiles, or any other self-propelled vehicles, unless this policy is otherwise specifically endorsed."

Rider No. 2 is in part as follows: "Notwithstanding anything contained in the undermentioned policy to the contrary, it is understood and agreed that said policy shall apply to and cover in respect of bodily injuries or death suffered in connection with the Assured's operations anywhere in the State of Illinois." It may be conceded that in the absence of Rider No. 2 there could be no liability under the policy for losses relating to the accident in question which caused injuries to nonemployees at a location five miles away from the premises of the foundry company and by a

horse-drawn vehicle. Liability, if any, must therefore be imposed by Rider No. 2, and this seems to describe the accident which was clearly ''in connection with Assured's operations,'' and in the State of Illinois.

It is claimed that this does not apply to the policy as a public liability policy, but only to the policy considered as imposing liability for damages under the Workmen's Compensation Act; that this rider refers to ''the undermentioned policy'' and therefore does not relate to the ''Public Liability Endorsement'' rider where liability is restricted, as therein stated, to accidents upon the premises and to injuries not caused by vehicles. It should be noted that this latter restriction exists ''unless this policy is otherwise specifically endorsed.'' This proviso contemplates the language of Rider No. 2, added by endorsement, which makes the policy apply to any injuries or deaths ''suffered in connection with the Assured's operations.''

We are referred to no cases holding that a rider cannot relate to any other rider but only to the body of the policy. It would seem to be the better rule to construe the policy and all endorsements or riders attached thereto as one instrument and to give meaning and operation to every part.

The application attached to the policy, under the heading ''Location of Operations Covered,'' gave the streets and street numbers of the location of assured's plant; but evidently the policy was intended to and does cover more than injuries occurring at this plant, for the classification of employees and business operations insured is structural steel and ''fitting and assembling products and materials, and all operations incidental to the business,'' also ''Teamsters and Drivers of Teams and Helpers.'' This manifestly contemplated and included work and employees at places away from the plant, so that, with reference to the employees included, the policy covered any liability imposed on the employer under the Workmen's Com-

pensation Act within the territorial jurisdiction of the statute, which is the State of Illinois; hence Rider No. 2, which purports to make the policy cover "operations anywhere in the State of Illinois," adds nothing to the coverage of the policy considered as related to the Compensation Act. It is therefore superfluous and useless unless it can be related to the policy in its public liability character. Under the rules of construction we must, if reasonably possible, connect it with the rest of the document so as to give it meaning and operation. This may be done by connecting this rider with the "Public Liability Endorsement" so as to remove the restrictions therein as to place and cause of the injuries and as extending the public liability to "operations anywhere in the State of Illinois."

The construction of the policy and its endorsements is not free from difficulty. We have applied the well-established rule that the policy is to be liberally construed in favor of the insured and any ambiguity must be resolved in its favor. *Higgins v. Midland Casualty Co.*, 281 Ill. 431. When two interpretations equally reasonable are possible, that construction should be adopted which will enable the insured to recover. *Zeman v. North American Union*, 263 Ill. 304; *Western Tube Co. v. Aetna Indemnity Co.*, 181 Ill. App. 592; *Davis v. Midland Casualty Co.*, 190 Ill. App. 338; *Nadler v. Illinois Commercial Men's Association*, 188 Ill. App. 459.

As we are not convinced otherwise, the judgment is affirmed.

*Affirmed.*

Matchett and Johnston, JJ., concur.